UAD:NDB
F.# 2016R00019



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER ID 100007537546481 AND FACEBOOK USER NAME RAHH SWAQQEDUPP THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC | APPLICATION FOR A SEARCH WARRANT FOR INFORMATION IN POSSESSION OF A PROVIDER (FACEBOOK ACCOUNT)<br><br>Case No. _____ |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, ANDREW O'CONNELL, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been since 2015. I am responsible for conducting and assisting in investigation into the activities of individuals and criminal groups responsible for firearms

offenses, including armed robberies. I have participated in investigations involving search warrants and arrest warrants, including search warrants for electronic data and social media. As a result of my training and experience, I am familiar with the technique and methods used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 1951 and 924(c) have been committed by RODNEY GILLIAN and other persons known and unknown. There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## PROBABLE CAUSE

5. On October 4, 2015, at approximately 11:55 p.m., four men entered and robbed the National Gourmet Deli and Grill, located at 1091 Bedford Avenue, Brooklyn, New York, before fleeing on foot. As can be seen from surveillance video of the robbery, two of the men brandished guns during the robbery.

6. On December 13, 2015, RODNEY GILLIAN was arrested after the Kings County District Attorney's Office secured an indictment in connection with his role in the robbery of the National Gourmet Deli and Grill. At the time of his arrest, GILLIAN had in his possession a white LG cellular telephone ("Gillian's phone").

*[handwritten annotation at top: "A review of a law enforcement database links the Target Facebook Account to Facebook user ID 100007537546481. el 1/23/17"]*

7. On January 8, 2016, pursuant to a federal investigation of the robbery, the Honorable Steven M. Gold, Magistrate Judge for the Eastern District of New York, issued a search warrant for Gillian's phone. The subsequent search of Gillian's phone revealed that GILLIAN used it to access his Facebook account (the "Target Facebook Account"). Review of the telephone's web history further revealed that GILLIAN also accessed the Facebook page of an individual named TYQUAN REED on numerous dates in November 2015 and on or about December 3, 2015. GILLIAN had previously told NYPD officers that Tyquan Reed had forced him to participate in the robbery. Any communications between GILLIAN and REED are not accessible from the public portions of the Target Facebook Account or from the local data on Gillian's phone.

8. On February 18, 2016, a grand jury in this District returned a three-count indictment charging RODNEY GILLIAN with Hobbs Act Robbery Conspiracy and Hobbs Act Robbery, both in violation of 18 U.S.C. § 1951, and Brandishing a Firearm in Connection with a Crime of Violence, in violation of 18 U.S.C. § 924(c), all in connection with the October 4, 2015 robbery.

9. On October 28, 2016, RODNEY GILLIAN pled guilty to Hobbs Act Conspiracy and Hobbs Act Robbery before the Honorable Eric N. Vitaliano. GILLIAN is currently detained at the Metropolitan Detention Center.

10. ATF agents have viewed public portions of the Target Facebook Account, which has the public display name "Rah SwaqqedUpp." The profile photographs posted to that account match known photographs of GILLIAN from a law enforcement database. The Target Facebook Account reveals photographs and messages acknowledging GILLIAN's affiliation with the street gang known as Brisp Nation as well as videos posted to the Target Facebook Account in

February and March 2015 showing GILLIAN (i) holding what appears to be large amounts of cash, (ii) standing with another man holding what appears to be large amounts of cash and a bag of narcotics and discussing getting "chicken" and his "gang, gang, gang," and (iii) walking with several men, several of whom flash what appear to be gang signs, discussing "gang shit" and going on a "money hunt."

11.    In my training and experience, when several self-identified gang members go on a "money hunt" and display wads of cash, it is in connection with criminal activity.

12.    I last viewed the Target Facebook Account on January 23, 2017, and confirmed that it has not been closed.

13.    Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

14.    Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

15.    Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual

4

Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

16. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

17. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

18. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

19. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

20. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

21. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

22. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

23. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

24. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

25. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

26. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

27. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

28. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's

profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

29. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

30. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

31. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal

conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

32. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

33. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

34. Based on the forgoing, I request that the Court issue the proposed search warrant.

35. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

36. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

*Andrew O'Connell* (signature)

Andrew O'Connell
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me on _____JAN 23_____, 2017

_____
Honorable Steven M. Gold
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with the Facebook user ID 100007537546481 and Facebook user name "RAHH SWAQQEDUPP" that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.     Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a) All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b) All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c) All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d) All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments;

gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f) All "check ins" and other location information;

(g) All IP logs, including all records of the IP addresses that logged into the account;

(h) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i) All information about the Facebook pages that the account is or was a "fan" of;

(j) All past and present lists of friends created by the account;

(k) All records of Facebook searches performed by the account;

(l) All information about the user's access and use of Facebook Marketplace;

(m) The types of service utilized by the user;

(n) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

2

II. **Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Sections 1951 and 924(c) involving RODNEY GILLIAN and others known and unknown since August 1, 2015, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) Robberies and firearms;

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

3

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Facebook, and my official title is _____. I am a custodian of records for Facebook. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Facebook, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.   all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.   such records were kept in the ordinary course of a regularly conducted business activity of Facebook; and

c.   such records were made by Facebook as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____   _____
Date                                                        Signature